IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

NOAH J. PRITT,  }
    Plaintiff  }
  }  CIVIL ACTION NO.
vs.  }
  }  CV-97-1963-E
ANNISTON WATER WORKS & SEWER  }
BOARD OF THE CITY OF  }
ANNISTON,  }
    Defendant

FILED
98 JUN 15 PM 2:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUN 15 1998

**MEMORANDUM OPINION**

Presently before the court is a motion by the defendant, Anniston Water Works and Sewer Board Of The City Of Anniston ("Board"), for summary judgment. Also before the court are two motions in limine filed by plaintiff, Noah J. Pritt ("Pritt"). In the above entitled action Pritt asserts claims of retaliation in violation of his First Amendment rights and claims of employment discrimination based upon race.

Because Pritt failed to respond to the defendant's argument that it is entitled to summary judgment on his First Amendment claims, said claims are considered abandoned. *See Resolution Trust Corp. v. Dunmar*, 43 F.3d 587, 599 (11th Cir.)("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.'... Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")(citations omitted), *cert. denied*, *Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74 (1995).

Therefore, summary judgement for the Board is appropriate on said claim. The court is also willing to grant Pritt's motions in limine, but only to the extent that Pritt seeks to exclude evidence regarding the <u>nature</u> of the offenses committed. Because genuinely disputed material issues of fact exist surrounding Pritt's race discrimination claim, summary judgment is inappropriate on said claim.

## II.   SUMMARY JUDGMENT STANDARD

Under F.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

## III. FACTS

The Board terminated Pritt, who is white, on November 21, 1994 after discovering that he had been convicted of a felony. (Def.'s Ex. A.)  Pursuant to the terms of the Board's employee handbook, the Board "immediately" discharges employees who are convicted of felonies. (Def.'s Ex. B at pg. 34.) The handbook does not indicate that the sanction of termination is discretionary. However, Pritt's termination letter does state that the Board will "seriously consider rehiring" an employee who is able to have his conviction set aside within sixty days after termination. (Def.'s Ex. A.)

## IV. MOTION FOR SUMMARY JUDGMENT

Pritt attempts to make out a prima facie case for race discrimination by arguing that he was disciplined more severely, for his felony conviction, than a black employee, Chris Jacobs ("Jacobs"). Jacobs was convicted of the same felony as Pritt, unlawful distribution of a controlled substance, on August 11, 1992. (Pl.'s Ex. 2., Lay Dep. at 82.) Although the Board learned of this incident sometime close to the date of Jacobs's conviction, the Board did not terminate him until more than twenty-seven months later. (Lay Dep. at 82 - 83.) Indeed, the Board terminated Jacobs on the same day it terminated Pritt, November 21, 1994. (Lay Dep. at 82 - 83; Def.'s Ex. D.) While it is unclear from the record precisely when Pritt was convicted and when the Board learned of his conviction,[1] assuming he was convicted in May 1994, the Board terminated him within in four months of his conviction. Therefore, Pritt can show that the Board treated him disparately from Jacobs, whom the board allowed to remain on the payroll more than twenty-seven months after it learned of his conviction.

When asked to explain why it allowed Jacobs to remain on the job for over two years after learning of the conviction the Board

---

[1] In his "complaint," Pritt asserts that he was convicted "on or about 9-8-94." (Compl. at ¶2.) The Board asserts that Pritt was convicted on May 25, 1994, but its citations fail to support this assertion. (Def.'s Br. at pg. 1) Neither party explains when the Board actually learned of the conviction.

3

claimed that it viewed Jacobs and Pritt differently. Specifically, the Board asserts that Jacobs and his attorney presented evidence to the Board that led it to believe Jacobs's conviction might be overturned. (Lay Dep. at 83, 86, 88) Therefore, asserts the Board, it has produced a legitimate non-discriminatory reason for treating Jacobs and Pritt disparately.

In response, Pritt has produced sufficient evidence from which a jury might find that the Board's "legitimate non-discriminatory reason" is pretextual. First, the Board's handbook does not provide that the decision to terminate an employee with a felony conviction is discretionary. The policy specifically provides that such employees "will" be terminated. (Def's Ex. B.)  However, the Board simply ignored this policy for over two years in Jacobs's case. The Board further departed from its policies by holding a special meeting, at which no minutes were taken, to consider Jacob's felony conviction. (Lay Dep. at 88)  The Board held no such meeting when it learned of Pritt's conviction.

Even more damaging evidence of pretext can be found in the affidavit of Chris Jacobs. (Pl.'s Ex. 3.) In his affidavit, Jacobs claims that he never authorized, nor discussed an appeal of his conviction with his attorney and he knew of no efforts to overturn the decision. *Id.* at ¶ 4.  When the board finally terminated him, Jacobs claims that the Board's General Manager,

4

Charles Lay ("Lay"), told Jacobs that he would not have been terminated had it not been for Pritt's situation. *Id.* at ¶ 6.

A jury could also find pretext in the circumstances surrounding Jacobs's re-employment at the board. The termination letters sent to both Jacobs and Pritt indicated that the Board might "seriously consider rehiring" the men if, within sixty days, they were able to show that their convictions had been set aside. (Def.'s Ex. A, D.) There is no evidence that Jacobs's conviction was set aside. However, the Board allowed Jacobs to return to the Board, as a temporary employee, approximately four months after his termination. (Def.'s Mot. for Summ. J., Miller Aff.) Although the Board did not directly employ Jacobs, he still worked at the Board through an arrangement with a temporary agency. In addition, Jacobs claims that the Board contacted him regarding this re-employment arrangement. (Pl.'s Ex. 3 at ¶ 7.) When Jacobs met with the Board, the parties agreed he would seek re-employment via the temporary agency. *Id.* at ¶ 8. After he worked a certain number of hours, he would then become eligible for re-employment as an official Board employee. *Id.* at 8. However, when he sought re-employment, he was told he would first have to get his GED, but that he could continue as a "temporary" employee until he obtained the GED. *Id.* at 10. On the other hand, Pritt's attempt to obtain re-employment with the Board was unsuccessful. Finally, several weeks after the Board told Jacobs that he needed his GED in order to seek reemployment, Lay

5

informed Jacobs that the Board was going to have to terminate him again because of the Pritt situation. *Id.* at 11.² Given this evidence, summary judgment for the defendant is inappropriate on Pritt's race discrimination claim.

## V. MOTIONS IN LIMINE

Pritt asks this court to "prevent the Defendant from referring, in <u>any manner</u> to [Pritt's and Jacobs's] arrests or convictions in a manner involving the unlawful distribution of a controlled substance." (Pl.'s Motions In Limine (Doc. 24, 25.) (emphasis supplied)). According to Pritt, such evidence should be excluded because it is irrelevant and would unfairly influence the jury.

Undoubtedly the fact that Pritt and Jacobs were convicted of felonies is relevant and its probative value outweighs any prejudice. *See* F.R.E. 402, 403. First, Pritt's conviction forms the basis for the defendant's "legitimate non-discriminatory reason" for his termination. Second, Jacobs's conviction supplies Pritt with an appropriate comparator, thereby providing evidence of pretext. Therefore, the court assumes that Pritt actually seeks to exclude evidence regarding the <u>nature</u> of convictions.

---

² The statements attributable to Lay are admissible as party-opponent admissions. F.R.E. 801(d)(2). *See EEOC v. HBE Corp.*, 135 F.3d 543, 552 (8th Cir. 1998) (noting that statements made in the course of employment by an employment manager were admissible as non-hearsay)

6

Because the Board's termination policy, as it relates to felony convictions, does not depend upon the type of the felony committed, evidence regarding the nature of the felonies committed by Pritt and Jacobs is irrelevant. The *type* of felony for which the men were convicted does not have "any tendency to make the existence of any fact that is of consequence [in this case] more probable or less probable than it would be without the evidence." F.R.E. 401 (defining relevancy). Because the nature of the convictions is irrelevant, said evidence is excludable. *See* F.R.E. 402 (requiring exclusion of irrelevant evidence); *United States v. Miller*, 895 F.2d 1431, 1433 - 35 (D.C. Cir. 1990) (admitting evidence of criminal defendant's past conviction, in an effort to prove a material issue other than character, but excluding evidence of the specific offense).

A separate appropriate order will be entered
DONE this 15 day of June, 1998.

                */s/ William M. Acker*
                WILLIAM M. ACKER, JR.
                UNITED STATES DISTRICT JUDGE