FILED

98 NOV -6 PM 1:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

cho

ENTERED

NOV 6 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| NOAH J. PRITT,<br><br>    Plaintiff<br><br>vs.<br><br>ANNISTON WATER WORKS AND<br>SEWER BOARD OF THE CITY OF<br>ANNISTON, ALABAMA,<br><br>    Defendant | }<br>}<br>}<br>}  CIVIL ACTION NO.<br>}<br>}  97-AR-1963-E<br>}<br>}<br>}<br>}<br>} |

## MEMORANDUM OPINION

This is a strange case. But, aren't they all?

There are two questions that must be answered affirmatively if the motion filed by defendant, Anniston Water Works and Sewer Board of the City of Anniston, Alabama, pursuant to Rule 50(a), F.R.Civ.P., is to be denied, and the jury's award of $8,800 in back pay reduced to judgment in favor of plaintiff, Noah J. Pritt.

The first question is: Does Title VII cover a situation like this one? The second question is: Did Pritt meet his burden of proving the amount of lost wages that was awarded by the jury?

The first question becomes too complicated to be answered without first reciting the convoluted evidence construed in a light most favorable to Pritt, giving him the benefit of all credibility determinations and logical inferences. Pritt is white. He was a long-time, well-thought-of employee of Anniston Water when he pled guilty in a state court to selling a controlled substance. At that time he knew that Anniston Water's employee handbook called for

1

automatic termination upon an employee's felony conviction. He knew, however, that Chris Jacobs, a black fellow employee, who was an active member of the NAACP, had two years earlier pled guilty to the same felony in a state court but had not been fired and was working regularly. Pritt was told by an Anniston Water supervisor that under the circumstances he had nothing to worry about. Ostensibly, Pritt knew of the Jacobs exception to Anniston Water's rule when he entered his guilty plea. Instead of keeping Pritt on the payroll, as he had anticipated, Anniston Water promptly fired both Pritt and Jacobs, both of whom had been granted probation.

Any claim by Pritt of a racially motivated discharge is barred by the 180-day limitation period, because Pritt did not take the matter in a timely fashion to the EEOC when he was fired after his guilty plea. Time passed. Jacobs was approached by a black member of the board of directors of Anniston Water and told that the could get his job back by becoming an employee of a so-called "temporary" service, and that after a probationary period he would be put back on the payroll "full time" with all employee benefits. Jacobs thereupon quit another job, became a "temporary" or "contract" employee and began working at Anniston Water performing the same functions that he had performed before his earlier termination. Jacobs was happy. When Pritt learned of Jacobs' good fortune, Pritt, with new-found hope, went to the new manager of Anniston Water and was given an application form, which he filled out. The

manager expressed delight at Pritt's superior qualifications. Pritt was certainly qualified by experience and training to handle a water treatment operation. He had an ADEM certificate to prove it. He also had a drug test certificate showing that he was free of drugs. His only drawback was his felony conviction, but Jacobs was a convicted felon and was working, and the application form expressly provided that being a convicted felon does not preclude employment. In other words, Anniston Water had a strict written policy of firing a person when convicted of a felony but expressly disclaimed any policy against rehiring that same person. The manager told Pritt that Anniston Water would find him a spot, but, after the manager's consultation with the board of directors and its lawyers, Anniston Water, instead of hiring Pritt, reneged on its promise to hire Jacobs full time and terminated Jacobs.

Anniston Water argues that it treated Pritt and Jacobs alike in refusing to rehire both of them. Jacobs was told on both occasions when he was terminated that the Pritt situation was the reason for his termination. This assumes that the "temporary" designation for Jacobs was a subterfuge and a means of accomplishing the rehiring of Jacobs despite his failure to have his felony conviction set aside.

Although the ultimate fate of both Pritt and Jacobs was the same, Jacobs arguably was given preferential treatment over Pritt, and his preference can be traced to his race. If Jacobs was

3

preferred because he was black, Pritt was the victim of his not being black, i.e., white. It is true that Pritt was not replaced by a black, but his treatment, in comparison with Jacobs, was disparate. It was the product of a kind of employer decision-making that Title VII was designed to prevent. If Anniston Water had some kind of nebulous, unwritten affirmative action program, it abandoned that program when it fired Jacobs. The fact that it twice took corrective action to "even things up" between Pritt and Jacobs only tends to prove that unequal treatment had been meted out. Keeping Jacobs for two years after his conviction and telling him that nothing would have been done if Pritt had not rocked the boat was preferential. The firing of Jacobs arguably constitutes an admission that he was hired in the first place because he was black and perhaps a black with political clout.

The question of whether there was evidence upon which the jury could reasonably have found that Anniston Water violated Title VII having been answered affirmatively, the only remaining question is whether Pritt met his burden of proving back pay in the amount awarded by the jury. As the court stated orally when the Rule 50(a) motion was being argued, and during closing argument, it cannot remember all of the evidence upon which Pritt bases his argument for lost pay resulting from the failure to rehire him. The court does recall that Pritt made $12.00 per hour as an employee of Anniston Water and worked 40 hours per week, whereas

before he obtained his present job making $12.00 per hour, he was either unemployed or was making $7.00 per hour.  Anniston Water asserts that Pritt failed to prove the precise date of his various employments and rates of pay.  The court, at Anniston Water's insistence, did charge the jury that Pritt was obligated to mitigate his back pay damages.  Both Anniston Water and Pritt are lucky that Pritt has obtained the good job he now holds with another water treatment and distribution system.  The court did not charge the jury that it could award nominal damages in lieu of undertaking to quantify Pritt's actual monetary loss.  Believing that there was enough evidence, despite its somewhat amorphous nature, upon which the jury could reasonably arrive at the $8,800 sum it arrived at in back pay, the court will not reduce the sum to a nominal figure and will not order a remittitur.

   A separate order and final judgment will be entered.
   DONE this __6th__ day of November, 1998.

                              _____
                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT JUDGE